Good morning. May it please the court. My name is D'Arkanian Burroughs on behalf of Enrique Matos-Herrera. I'd like to reserve two minutes for rebuttal. Alright. Please be reminded that the time shown on your clock is the total time you have. Yes, Your Honor. Thank you. The issues in this case is whether there was sufficient evidence to convict Mr. Matos of conspiracy to commit wire fraud, wire fraud, whether the district court abused its discretion in admitting evidence that my client had participated in prior fraudulent trips, the 404B argument. There were six individuals charged in this case. Four of them went to trial and two of them pled guilty prior to trial and testified on behalf of the government. This case was built upon circumstantial evidence and the testimony of the two cooperating defendants. Well, how is that not sufficient to sustain a conviction under our standards in the Supreme Court's Jackson case and our Neville's case? There's a lot of evidence there. You can argue that it shouldn't have been believed, but the jury did believe it. And we're not redoing it. We're asking ourselves, could any reasonable jury have reached that conclusion? Yes, Your Honor, and I understand that. I think that the evidence in this case, my client made no admissions to any participating or having knowledge of any fraudulent scheme in this case. He had two people testify against him directly who were involved in the scheme and they hit him all over videotapes. I mean, I got to say, and I didn't try to find out what argument was made to the jury, but what explanation could there have been for what he was caught on videotapes doing? And was it seven different Walmarts in the same day? Really? Your Honor, that's correct. Nobody goes shopping at seven different Walmarts in the same day. Your Honor, that is correct. My client was on video camera at seven different Walmarts through the Boise area on this particular case. So what's his explanation for how he's not involved in a conspiracy to commit wire fraud? Your Honor, I think that there's a difference between my client in this case and the two particular defendants in this case that cooperated with the government. He's on videotape. That's correct, Your Honor. Seven different Walmarts, same day, two guys testifying against him. What's his explanation? What's his defense? What does he say to the jury as to the innocent explanation for this conduct? Your Honor, that he did not have knowledge that the cards that he was using had fraudulent accounts or stolen items. And that's why he had to go to seven different stores on the same day and sometimes try multiple cards?  It doesn't take a genius to figure out you don't go to seven different Walmarts on the same day to run cards through to get gift cards. I mean, Your Honor, I understand that. But I'd like to point out that gift cards... I'm not faulting you. You're playing, doing the best you can with the hand you're dealt. But I'm trying to figure out how could it not be the case that a reasonable jury, some reasonable jury, could look at this evidence and say, you know, he's guilty. Isn't that the standard? Yes, Your Honor. I think that in this case, it wasn't just gift cards that were being purchased. There were other items that were being purchased in this case. Does that make it better or worse? Your Honor, I think that it demonstrates that what was actually going on here, as far as my client's concerned, who was only in the country for approximately four months at the time he was arrested, that he was shopping. This was a time that was close to Christmas. He was asked by his friends, particularly Martinez Marquez and Hidalgo, who were married to attend a trip with them to Idaho. And that was to attend a baby shower. When he was arrested in this case, he was interviewed by law enforcement, and he was asked, well, what were you doing here in Idaho? I was asked by my friends to accompany them on a trip to attend a baby shower. He made no admissions that he knew that there was fraudulent activity. When he was arrested, there was a wallet on his person. There were gift cards that were in his possession. But none of these gift cards were examined, but none of these cards actually had fraudulent or stolen account numbers on them. And there was no individual's name embossed on these cards. As the court pointed out, he was seen on video at approximately seven different Walmarts making purchases, but there's no evidence that when he was making these purchases with the cards that he had, that any of these cards had names of other individuals. And this is similar as well to the transaction terminals. The transaction terminals, there's no evidence that a name, an individual's name, was actually presented on those terminals when he was processing these. In fact, a loss prevention employee from one of the Walmarts testified that, yes, the Walmart terminals don't display a name. There's a signature line. And this is similar to the receipts that the customers receive as well. Did he offer an explanation as to why he had to go to seven different stores? I mean, that's the part that just bowls me over. Your Honor, I can't imagine an innocent explanation for going, I have enough trouble going to one Walmart. It's huge. It's got everything. Seven? Your Honor, and I understand that, and I'm not going to pretend that I can or even speculate on an individual's shopping habits in this case. But doesn't that weaken your argument that there is no rational explanation for that? Doesn't that support the jury's verdict then? Well, I think that the evidence that they had is he did not have the knowledge that, based upon the cards that he had, these were gift cards. And the name implies it's a gift. If you received a gift card, you're not going to have knowledge of whether that card has an encoded number that was in the phone account. He went to seven different stores to use the gift card. He used the gift card at store number one. Oh, excuse me. He made several purchases. He did make purchases of gift cards. But in addition to that, he also bought food items, water, I think there was a . . . Anything that wasn't available at the first Walmart? Or the second? Or the third? Or the fourth? I don't know what was available at all these Walmarts. I can't answer that. To return, though, to Judge Clifton's comment, we have co-conspirators testifying that Matos Herrera used the encoder and hid the encoder. And, again, we're back to the standard of any reasonable juror. This jury apparently believed the co-conspirators in the context of him using the encoder and then hiding it within the Subaru. Yes, Your Honor, and I would agree with that position. I do feel that the jury did consider the evidence or the testimony that was presented by the two cooperating co-defendants. But the jury also submitted a note after the fact that they didn't believe their testimony. Eight jurors submitted that. That's correct. But how does that relate to our standard for sufficiency of evidence? It's not whether this jury, but whether any reasonable jury could have found basis to convict. And at least four of the jurors didn't sign that note. So how doesn't that just, even if we can consider the note, what gives us the basis to decide other jurors couldn't have reached a conclusion separate and apart from what these eight decided about the credibility of the two witnesses? Thank you, Your Honor. Yes. The reason that the juror note was included in the briefing in this case is because I think it highlights the fact that the two cooperators, their inconsistent positions throughout the trial, their testimony. Mejia's fizz said that he had went on prior trips with all the defendants, including the other co-defendant who cooperated, and that the rest of the four defendants, they were there with him. Monson denied this. He said, the only person that I have ever been on prior fraudulent trips with, that was Mejia's fizz. There was also testimony by Monson that they had a discussion the first night they were in Boise while they were at dinner about what activities they had done that day. Mejia's fizz denied that. Mejia's fizz said that Monson had placed several gift cards, stashed them inside the panel in the door of the Suburban that he was driving, and he said that that was worth approximately $16,000. Monson denied that that actually occurred. He said that, I gave all my cards over to Mejia's fizz. Mejia said that he never swiped the cards while he was inside the Suburban while they were traveling in Boise. Monson said, no, that's not true. I saw him swiping. I saw him swiping, and I saw him handing gift cards to other defendants before they entered the store. So their positions were inconsistent, and that's why I highlighted that. What this shows is, in this case, there definitely were two people, two individuals, the two cooperators that had an agreement. They knew what they were going to do. They had done this before together. Counsel, do you want to say it's in time for rebuttal? Yes, Your Honor. All right, thank you. Good morning, and may it please the Court. My name is Josh Hurwitt. I represent the United States, and I was trial counsel in this matter. I want to begin, really, by jumping off from Judge Clifton's questions, because it sounds a lot like the closing statement that I gave in this case. There is just simply no explanation for the pattern of conduct here. It was worse than just seven Walmarts. It was a trip from Texas, where there are Walmarts, through Montana to Idaho to shop at seven different Walmarts on the first day, and then there was a second day where they hit, I think the testimony was four to five Walmarts. Then they started going to Walgreens because they could get some more money, they thought, and they got caught. So just based on the pattern of evidence that the jury saw, and there was 117 transactions that we put into evidence at the trial, the jury had every reason to find the defendant was part of this conspiracy, that he committed wire fraud, and that he committed aggravated identity theft. What's your response to opposing counsel's position that the defendant never acknowledged that he was aware that there was intent to defraud? Well, the fact that a defendant doesn't confess or make an admission is not necessarily exculpatory, and it's not enough to outweigh all the evidence that the jury saw that proved his knowledge. So again, if we're talking about the knowledge that he had, there was the testimony by the co-conspirators, the cooperating defendants, that they all knew exactly what they were doing, that they had done it before, and that as they were doing it, at least one cooperator stated they talked about it. Setting that aside. Do you take issue with opposing counsel's representation that the statements of the cooperators were inconsistent? I do for some of the testimony that was pointed out in the brief. I acknowledge that these cooperators, their testimony, I think, had different vantage points, and so you could look at it as inconsistent in some respects. However, for the main points, they were consistent. They talked about the background of the trip, how the scheme worked, what this defendant's role was in the scheme, and, for example, they both said that he swiped cards through the encoding device and that he was the one who hid the encoding device in their vehicle as they were going around town, and police did find it hidden in a DVD player, ultimately. So whether or not there's inconsistencies or the extent of those inconsistencies is really irrelevant to the standard here, because the jury was tasked, of course, with resolving conflicts in the evidence, and so to the extent there are any conflicts, that was done through deliberations. Pardon me. And that brings, again, to this whole issue of the jury note. I think Judge Clifton pointed out the standard isn't, you know, did this group of eight people who signed this jury note? The question isn't what they thought about the cooperators. The question is could any reasonable jury find evidence sufficient to convict the defendant of the offenses, be it evidence from the cooperators, which we had, but even if we set all that aside and we tried to make this point in our brief, even setting aside the evidence from the cooperators, there was so much evidence in this case. If you just look at the transactions, if you look at the defendant's conduct in hiding gift cards, in hiding the encoding device, and then if you look at this made-up story about a baby shower, and I just want to be clear, there was no evidence in the case that there was a baby shower or that they had a legitimate reason to be in Idaho. The evidence in the case was that the baby shower was made up by the co-conspirators and by the conspirators when they got caught. So, Your Honors, I would just rest on what the standards are here, that any conflicts in the evidence must be viewed in the light most favorable to the government in this case. Circumstantial evidence is sufficient to prove intent and the knowledge elements of these crimes, and the jury had every reason to find these people guilty, given the conflicts of evidence which may or may not have existed or to the extent of them. Those are the standards. Did you need the 404B evidence? I'm sorry, Your Honor? Did you need the 404B evidence? I don't think I needed it. I think it was perfectly admissible. So if the Court does not have any other questions, I would submit. Would it then, how in the context of that statement is it more probative than prejudicial? Well, I think one thing that tripped up the trial court at first when we had his initial ruling and then we went back to talk about the issue, the evidence is so overwhelming here. I think we could have obtained convictions just based on seven Walmarts in one day. If that had been the extent of the evidence, we could have obtained convictions. However, we wanted to present our full case as we're entitled to do, and the fact that evidence is highly probative but perhaps not necessary to put the nail in the coffin doesn't make it inadmissible would be my response. Lawyers wear belts and suspenders at the same time. I try to. Thank you. Thank you, Counsel Rebuttal. Yes, Your Honor, thank you. I just wanted to touch on the 404B just briefly on that. Counsel argued that the main points as far as the co-defendants that cooperated in this case, they were consistent in this case, and I think one of the main points that's pointed out in the 404B argument is they were not consistent in their testimony as far as prior trips, and that was important in this case because that demonstrated, as the government pointed out at trial, that it was very important to show the knowledge between the defendants because if they're saying that we don't know what we're doing here other than being at a baby shower, this shows the fact that they were on prior trips that they knew exactly what they were doing. So it definitely was important for the knowledge aspect as far as the government's position in this case, and in this case on the 404B, the government or the court itself had to find that there was sufficient evidence that the other acts occurred. The only evidence that we had in this case that the other acts occurred or the prior trips was Mejia's fist saying they did, which Monson denied. He said, I never went on any other trips with any of these people. He said that Mr. Matos, he actually never even discussed any kind of prior trips. So the evidence we had was insufficient for the district court to make the ruling that the 404B evidence was admissible in this case, and we feel that this error was harmless to the client. Harmless? Excuse me, Your Honor? You said harmless? Harmful. I'm sorry, Your Honor. I apologize. With that, Your Honor, I will submit. All right. Thank you, counsel. Thank you to both counsel for your arguments in this case. The case is submitted for decision by the court. The next case on calendar for argument is Rabang v. Kelly.
judges: Rawlinson, Clifton, Freudenthal